# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2006 DEC 22  A 8 23

CLERK_____
SO. DIST. OF GA.

JOEL E. PRICE, JOSHUA          :          CIVIL ACTION
KRUPA and CYNTHIA KRUPA,
individually and on behalf     :
of all similarly situated
individuals,                   :

    Plaintiffs,           :

       v.            :

LANDSAFE CREDIT, INC., and     :
COUNTRYWIDE HOME LOANS, INC.,
                :

    Defendants.           NO. CV205-156

## O R D E R

Plaintiffs, Joel E. Price, Joshua Krupa, and Cynthia Krupa, brought the above-captioned case against Defendants, Landsafe Credit, Inc. ("Landsafe"), and Countrywide Home Loans, Inc. ("Countrywide"). Price and the Krupas allege that Defendants violated the Real Estate Settlement Procedures Act of 1974 ("RESPA"), codified at 12 U.S.C. §§ 2601-2617, in connection with their residential mortgages.

AO 72A
(Rev. 8/82)

Presently before the Court is Defendants' motion for summary judgment. The motion will be **GRANTED**.

## BACKGROUND

Countrywide is a residential mortgage loan broker, and Landsafe is a credit reporting company. Both are wholly-owned subsidiaries of Countrywide Financial Corporation. Landsafe offers its credit reporting services to Countrywide and other unrelated lenders.

Price and the Krupas obtained home mortgage loans from Countrywide in 2003 and 2004, respectively. Plaintiffs paid a $35 flat fee for credit report services to Countrywide. That sum was in turn paid by Countrywide to Landsafe for the provision of credit reports. No part of the sum was retained by Countrywide. In each instance, with respect to the named Plaintiffs, Countrywide ordered multiple credit report products, which were provided at no additional charge under the flat-fee pricing structure.

In adopting the flat-fee pricing structure, Landsafe designed the price to be revenue-neutral, and compared its new pricing structure to the prices charged by its competitors to

ensure that its products and services would be competitive in the marketplace, as packaged and priced.

In 2002, Countrywide settled a class action lawsuit related to alleged overcharges for credit reports.[1] Countrywide obtained credit reports from Landsafe before and after the settlement.  Plaintiffs contend that Countrywide and Landsafe were motivated to change its pricing structure by the class action settlement.  According to Plaintiffs' theory of the case, before this settlement, Countrywide charged borrowers $25 for a credit report, but, thereafter, it had Landsafe raise the fee to $35, and passed the extra cost onto their customers.

In this way, Plaintiffs aver that a portion of the price paid by borrowers for their credit reports was part of an illegal kickback scheme between Countrywide and Landsafe. Plaintiffs assert that Landsafe provides Countrywide with "free" credit reports for potential customers who do not secure a mortgage loan with Countrywide, in exchange for charging an increased fee to customers who use the lender for their mortgages.[2]

-------

[1]

Gonzales v. Countrywide Home Loans, Inc., Nos. B163706, B166302, 2004 WL 1904280, at *1-*3 (Cal. Ct. App. Aug. 26, 2004).

[2]

In light of Plaintiffs' acknowledgment that Countrywide did not
(continued...)

3

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56© provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor. . .", United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).

---

[2](...continued)
charge an inflated price to each borrower, keeping a portion of the fee for no or nominal work performed, and paying part of the fee over to Landsafe, there is no basis for Plaintiffs' allegation that Defendants violated § 8(b), which prohibits fee-splitting and markups of a third party vendor's fees. Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶ 3.

**DISCUSSION**

Under § 8(a) of RESPA, no person shall accept any thing of value in exchange for an agreement to refer real estate settlement services to another person.[3]   Plaintiffs maintain that Defendants have an agreement to refer business in exchange for illegal kickbacks, in violation of RESPA.   According to Plaintiffs, Landsafe provides free credit reports for loans that do not lock-in to Countrywide.   In exchange, Countrywide pays Landsafe $35 for credit reports for loans that do lock-in, which is an unlawful kickback under the law.

Plaintiffs contend that Defendants' scheme is not saved by the fact that Landsafe actually provided additional credit reports to Countrywide.   Plaintiffs posit that this referral agreement is unlawful because borrowers are paying for services unrelated to Plaintiffs' own loans.   Instead, those additional fees subsidized the creditworthiness inquiries relating to

---

[3]

More specifically, the statute provides that:

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C.A. § 2607(a) (2001).

potential customers who did not obtain mortgages with Countrywide.

Contrary to Plaintiffs' contentions, Defendants argue that their flat-fee pricing structure does not constitute a kickback or an unearned fee under RESPA. Defendants contend that the flat-fee pricing structure does not increase costs to borrowers, because it is typical for borrowers to pay for overhead generated by a lender's unsuccessful efforts.

Defendants assert that there was no unlawful referral agreement, and that Plaintiffs' contention that Countrywide directed its credit reporting business to Landsafe to extract a kickback in the form of free credit reports is unfounded. Rather, the uncontroverted evidence shows that the change in fee structure was designed to be revenue-neutral. Boland Dep. 57-58. Notably, there is no evidence that the companies adopted the approach to refer additional business to Landsafe, or that Countrywide threatened to stop referring business to Landsafe if it refused to adopt the pricing structure.

Courts have rejected challenges to the reasonableness of flat-fee price structures, even though cross-subsidization between customers is inherent in such an arrangement. Lane v. Residential Funding Corp., 323 F.3d 739, 742-46 (9th Cir.

AO 72A
(Rev. 8/82)

2003). Relatedly, courts refuse to evaluate whether prices are "too high" under RESPA, as it is not a price control statute. See, e.g., Kruse v. Wells Fargo Home Mortgage, Inc., 383 F.3d 49, 56 (2d Cir. 2004); Santiago v. GMAC Mortgage Group, Inc., 417 F.3d 384, 387 (3d Cir. 2005). Plaintiffs have produced no precedent in support of their remarkable supposition that business charges for overhead violate federal law.

The cost of investigating potential borrowers' creditworthiness is characterized appropriately as overhead. This necessary business expense makes loan transactions possible for creditworthy borrowers. It is not unlawful under RESPA to pass credit reporting fees for borrowers who do not close with Countrywide on to those borrowers who secure mortgages with the company.

RESPA does not require lenders to eliminate overhead by charging a separate credit report fee to all customers, including pre-qualification requests by prospective borrowers. Nor does it require lenders to recoup their business expenses only through the levy of a specific charge for "overhead." Charges for other services that do not benefit borrowers directly, like mortgage insurance, may be passed through to

7

them under RESPA.  <u>Pedraza v. United Guaranty Corp.</u>, 114 F.
Supp. 2d 1347, 1349 (S.D. Ga. 2000).

As one court has explained, "§ 8 can reasonably be
construed as only prohibiting payments that are for nothing
else than the referral of business." <u>Schuetz v. Banc One
Mortg. Corp.</u>, 292 F.3d 1004, 1013 (9th Cir. 2002).  Under the
law, Landsafe may include in its $35 fee all manner of business
expenses, including the non-invoiced credit reports.[4]  Section
8(c) of RESPA creates a safe harbor from liability under the
section if the payment at issue constitutes bona fide
compensation.  12 U.S.C.A. § 2607(c) (2006 Supp.).  HUD's
Regulation X, interpreting this provision, reads the statute
to permit payments that have a reasonable relationship to the
market value of the goods and services provided.  24 C.F.R. §
3500.14(g)(iv); § 3500.14(g)(2) (2006).

> [T]he first question is whether goods or facilities
> were actually furnished or services were actually
> performed for the compensation paid.  The fact that
> goods or facilities have been actually furnished or
> that services have been actually performed by the
> [settlement service provider] does not by itself make

---

[4]     Stated in another way, a party who pays for its own "kickback" is not
receiving a kickback.  If the extra benefit is the provision of "free"
reports, but Countrywide is paying LandSafe for them, then the credit
reports are not free.  There was no unearned fee because there was no
charge for which "no or nominal work" was done.  HUD Statement of Policy
2001-1, 66 Fed. Reg. 53,052, 53,057 (2001).

the payment legal.   The second question is whether
the payments are reasonably related to the value of
the goods or facilities that were actually furnished
or services that were actually performed.

Statement of Policy 2001-1, 66 Fed. Reg. at 53,054.

Moreover, § 8(c)'s safe harbor is not limited to an
analysis of the cost of services performed for the borrower.
Indeed, the HUD Statement provides that such an analysis is
neither necessary nor feasible.   Rather, it is total
compensation that is relevant, particularly as that figure
relates to price structures and practices in similar
transactions and in similar markets.   Id. at 53,055.

According to Defendants' expert, Robert Temple, the $35
fee charged to Plaintiffs is reasonably related to the value
of the services furnished by Landsafe.   In Temple's expert
report, he opined that bundled pricing is becoming more
prevalent in the industry because it allows for cost certainty
in estimating closing costs to customers.   The reasonableness
of this fee is buttressed by the fact that similar charges are
levied by others in the industry.   Temple Report ¶¶ 30-34;
Statement of Policy 2001-1, 66 Fed. Reg. at 53,055.

Plaintiffs have not presented any evidence to the
contrary, by designating an expert or otherwise, to show that
a reasonable relationship does not exist.   Overhead costs are

9

a necessary and reasonable part of the price structure for credit reports in the industry.

> In analyzing whether a particular payment or fee bears a reasonable relationship to the value of the goods or facilities actually furnished or services actually performed, HUD believes that payments must be commensurate with that amount normally charged for similar services, goods or facilities. This analysis requires careful consideration of fees paid in relation to price structures and practices in similar transactions and in similar markets. . . .

> The Department recognizes that some of the goods or facilities actually furnished or services actually performed by the broker in originating a loan are "for" the lender and other goods or facilities actually furnished or services actually performed are "for" the borrower. HUD does not believe that it is necessary or even feasible to identify or allocate which facilities, goods or services are performed or provided for the lender, for the consumer, or as a function of State or Federal law. All services, goods and facilities inure to the benefit of both the borrower and the lender in the sense that they make the loan transaction possible.

HUD Statement of Policy 1999-1, 64 Fed. Reg. 10,080, 10,086 (1999).

In sum, there are no genuine issues of material fact in dispute, and Defendants are entitled to judgment as a matter of law. It is not unlawful for Landsafe to charge customers for their overhead, and Defendants' pricing scheme does not run afoul of RESPA or its related regulations. If settlement service providers were prohibited from recouping its business

AO 72A
(Rev. 8/82)

expenses, it would not be able to provide credit reports for borrowers at all.  Such overhead charges are reasonable and necessary, and permitted by governing law.

## CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is **GRANTED**.  Dkt. No. 32.  The Clerk shall enter judgment accordingly.

**SO ORDERED**, this _____ day of December, 2006.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

11

AO 72A
(Rev. 8/82)